**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

ALLAN GERARDO GARCIA,
Petitioner,
v.
JAMES JANECKA, et al.,
Respondents.

Case No. 5:26-cv-02519-MRA-MBK

**ORDER GRANTING PETITIONER'S MOTION FOR A TEMPORARY RESTRAINING ORDER AND ORDERING IMMEDIATE RELEASE FROM CUSTODY [2]**

Before the Court is Petitioner's Motion for a Temporary Restraining Order ("TRO") pending adjudication of his Petition for Writ of Habeas Corpus (the "TRO Application"). ECF 2. Petitioner seeks immediate release from custody and to enjoin his removal from the United States to Mexico. *Id.* at 6. The Court read and considered the moving and opposing papers and deemed the matter appropriate for decision without oral argument. *See* Fed. R. Civ. P. 78(b); L.R. 7-15. For the reasons stated herein, the Court **GRANTS** the TRO Application in part, **ORDERS** Respondents to release Petitioner forthwith, and **ENJOINS** his further detention unless and until he is provided proper due process necessary for the revocation of an Order of Supervision ("OSUP"). The Court further **ENJOINS** Petitioner's removal to a third country without notice and an opportunity to be heard.

//

//

## I. BACKGROUND

Petitioner Allan Gerardo Garcia ("Petitioner") filed this habeas petition on May 8, 2026. ECF 1. The petition alleges as follows:

Petitioner is a citizen of Honduras who originally entered the United States in 1985. *Id.* According to an I-213 form submitted by Respondents, Petitioner was ordered removed from the United States by an immigration judge on September 27, 2001. ECF 9-1 at 4. Petitioner was then removed to Honduras on October 24, 2001. *Id.*

Petitioner re-entered the United States in 2006 "after fleeing Honduras to prevent further torture." ECF 1 at 9. Petitioner claims that in 2010, he was stopped for a traffic ticket and was "handed over to INS and transported" to a detention center in Texas. *Id.* According to the I-213, this encounter happened on January 14, 2012, and Petitioner was processed "as a reinstatement of final order." ECF 9-1 at 4. Petitioner was then detained pending an asylum interview. *Id.* At the asylum interview on May 3, 2012, an asylum officer found Petitioner to have a positive claim of fear. *Id.* An immigration judge then granted Petitioner withholding of removal on January 24, 2013. *Id.* On February 5, 2013, Petitioner was issued an Order of Supervision ("OSUP"). *Id.*

Petitioner reported yearly for scheduled check-ins with Immigration and Customs Enforcement ("ICE") beginning in March 2013. ECF 1 at 9. During this time, ICE never attempted to effectuate Petitioner's removal. *Id.* at 10.

In March 2026, when Petitioner reported for his yearly check-in, he was instructed to report again the next month but was not given any explanation as to why. *Id.* at 9. When Petitioner complied by reporting the next month, on April 7, 2026, he was arrested by ICE. *Id.* Petitioner was not given any prior notice or warning of his arrest. *Id.* Petitioner has been held in detention at the Adelanto ICE Detention Facility since then. *Id.*

On April 13, 2026, Petitioner was issued a "Notice of Removal," indicating that ICE intends to remove him to Mexico. *Id.* Petitioner claims that the Notice of Removal was dated April 9, 2026, and that he was not issued any Notice of Revocation of Release, warrant, or custody determination documents. *Id.* Petitioner also claims that he was not

given any interview or afforded an opportunity to make a fear-based claim of being deported to Mexico.

Prior to his arrest, Plaintiff was employed by D.S.V. Air & Sea Corp. and had complied with the terms of his OSUP. *Id.* Petitioner has two U.S. citizen children, one who is 16 years old and one who is 8 years old, whom Petitioner supports emotionally, morally, and financially. *Id.* Cindy Montano, the mother of Petitioner's children is an active-duty member of the United States Army National Guard, and when she is deployed, Petitioner serves as the children's primary caregiver. *Id.* at 24. According to Montano, "[t]here is no equivalent alternative caregiver who can fully assume [Petitioner's] responsibilities without causing significant disruption to our children's lives and [Montano's] Military Career." *Id.*

In the instant TRO Application, Petitioner requests that the Court enjoin Respondents James Janecka, Warden of the Adelanto Detention Facility; Kristi Noem, former Secretary of Department of Homeland Security ("DHS"); James Pilkington, Assistant Field Office Director, Adelanto Detention Facility; and Adelanto ICE Processing Center Geo Group (collectively, "Respondents" or the "government") from continuing to detain him. ECF 2. Petitioner argues that his re-detention violates his Fifth Amendment right to due process, the Immigration and Nationality Act ("INA"), and implementing immigration regulations. ECF 1 at 13. Petitioner also requests the Court enjoin Respondents from removing him to a third country without adequate notice and an opportunity to be heard pursuant to immigration regulations. *Id.* at 17.

On May 14, 2026, Respondents filed an Opposition to the TRO Application. ECF 9. Respondents argue that Petitioner fails to establish that there is no significant likelihood of removal in the reasonably foreseeable future and that DHS improperly invoked his OSUP and detained him. *Id.* at 4–8. Respondents also argue that, contrary to Petitioner's allegations, Petitioner was served with a Notice of Revocation of Release and given an informal interview. *Id.* at 5; ECF 9-2 ("Notice of Revocation of Release" dated April 7, 2026); ECF 9-3 ("Alien Informal Interview" dated April 7, 2026). In the Notice of

Revocation of Release filed by Respondents, there is no box checked indicating the reason for the revocation. ECF 9-2 at 2. The form does indicate that that Petitioner was granted withholding of removal to Honduras, and that Petitioner's case "is under review for removal to an alternate country." *Id.* The Notice does not, however, indicate that ICE has the ability or means to effectuate Petitioner's removal. *Id.*

## II. LEGAL STANDARD

The standard for issuing a TRO and preliminary injunction under Federal Rule of Civil Procedure 65 is substantively the same. *Six v. Newsom*, 462 F. Supp. 3d 1060, 1067 (C.D. Cal. 2020) (citation omitted); *see also Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001) (noting that a TRO and preliminary injunction involve "substantially identical" analysis). Like a preliminary injunction, a TRO is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008). Under *Winter*, a plaintiff seeking a TRO must establish four elements: "(1) a likelihood of success on the merits, (2) that the plaintiff will likely suffer irreparable harm in the absence of preliminary relief, (3) that the balance of equities tip in its favor, and (4) that the public interest favors an injunction." *Wells Fargo & Co. v. ABD Ins. & Fin. Servs., Inc.*, 758 F.3d 1069, 1071 (9th Cir. 2014) (citing *Winter*, 555 U.S. at 20).

Courts in this circuit also employ "an alternative 'serious questions' standard . . . known as the 'sliding scale' variant of the *Winter* standard," *Fraihat v. U.S. Immigr. & Customs Enf't*, 16 F.4th 613, 635 (9th Cir. 2021) (cleaned up), in which the four *Winter* elements are "balanced, so that a stronger showing of one element may offset a weaker showing of another." *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011). Under this approach, a TRO may be warranted where there are "serious questions going to the merits and a hardship balance that tips sharply toward the plaintiff." *Id*. at 1132.

//

//

## III. DISCUSSION

Having reviewed and considered the filings and applicable law, the Court finds that Petitioner is likely to succeed on the merits or at least has raised serious questions going to the merits of his unlawful detention and third country removal claims, that Petitioner has established irreparable harm, and that the balance of hardships tips sharply in Petitioner's favor.

### A. Likelihood of Success on the Merits

In deciding whether to grant injunctive relief, "[l]ikelihood of success on the merits is the most important factor," *California v. Azar*, 911 F.3d 558, 575 (9th Cir. 2018) (citation and internal quotation marks omitted), especially for constitutional claims, *see Junior Sports Mags. Inc. v. Bonta*, 80 F.4th 1109, 1115 (9th Cir. 2023). Petitioner contends that his continued detention violates his rights under 8 U.S.C. § 1231(a), and that ICE's failure to comply with its regulations before re-detaining him violated his right to due process under the Fifth Amendment of the United States Constitution. ECF 1 at 13–14. Petitioner also argues that removal to a third country would violate his right to due process under the INA and implementing immigration regulations. *Id.* at 15–16. The Court addresses these claims in turn.

#### *1. Unlawful Detention*

The detention and removal of noncitizens[1] ordered removed is governed by 8 U.S.C. § 1231 ("Section 1231"). Section 1231 states that, once "an alien is ordered removed, the Attorney General shall remove the alien from the United States within a period of 90 days (in this section referred to as the 'removal period')." *Id.* § 1231(a)(1)(A). "During the removal period, the Attorney General shall detain the alien." *Id.* § 1231(a)(2)(A). Once the removal period passes and the "alien does not leave or is not removed . . . the alien,

[1] The Court prefers the term noncitizen, but uses the terms noncitizen and alien interchangeably, given the statutory and regulatory language at issue.

pending removal, shall be subject to supervision under regulations prescribed by the Attorney General[,]" which include statutorily mandated conditions. *Id.* § 1231(a)(3).

The revocation of release on supervision after the expiration of the removal period—*i.e.*, the revocation of an OSUP, like the one issued to Petitioner—is governed by 8 C.F.R. § 241.13(i). *Tiraturian v. Bondi*, No. 5-25-CV-03239-WLH-DFM, 2025 WL 4061565, at *2 (C.D. Cal. Dec. 8, 2025). Under that regulation, an OSUP may be revoked: (1) if the noncitizen "violates any of the conditions of release," *id.* §§ 241.13(i)(1), 241.4(l)(1); or (2) if it is determined "that there is a significant likelihood that the alien may be removed in the reasonably foreseeable future." *Id.* § 241.13(i)(2). Additionally, certain designated officials may revoke an OSUP as an act of discretion. *Id.* § 241.4(l)(2).

The regulations also establish "revocation procedures" that must be followed, including that the noncitizen "will be notified of the reasons for revocation of his or her release" and receive an "initial informal interview promptly" after being detained, to "afford the [noncitizen] an opportunity to respond to the reasons for revocation stated in the notification." *Id.* § 241.13(i)(3). During such an interview, the noncitizen "may submit any evidence or information that he or she believes shows there is no significant likelihood he or she will be removed in the reasonably foreseeable future, or that he or she has not violated the order of supervision." *Id.* "Together, the statutory and regulatory language sets forth three requirements to protect a noncitizen's right to due process: (1) the noncitizen must be informed of the basis for revocation; (2) the noncitizen must be provided a 'prompt' opportunity to present evidence and explain why revocation is not warranted; and (3) if the revocation is discretionary in nature, it must be made by an appropriate official." *Tiraturian*, 2025 WL 4061565, at *2.

Citing *Zadvydas v. Davis*, 544 U.S. 678 (2001), Respondents argue that Petitioner bears the initial burden to show that there is no significant likelihood of removal in the reasonably foreseeable future. ECF 9 at 3–4. In *Zadvydas*, the Supreme Court considered a noncitizen who had been detained and never released following a final order of removal. 533 U.S. at 701. In that context, the Supreme Court held that once a noncitizen has been

detained for six months and "provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with sufficient evidence to rebut that showing." *Id*. Respondents argue Petitioner cannot succeed in establishing his current detention is unreasonable because he was re-detained on April 7, 2026, he was issued a Notice of Removal to Mexico, and "[t]here is no bar against Petitioner's removal to Mexico." ECF 9 at 5.

But as several district courts have recognized, *Zadvydas*'s burden-shifting framework does not apply to noncitizens who are *re-detained* pursuant to the revocation of an OSUP. *Lu v. Joyce*, No. 2:26-CV-00041-SDN, 2026 WL 352447, at *3 (D. Me. Feb. 9, 2026); *Nguyen v. Hyde*, 788 F. Supp. 3d 144, 149 (D. Mass. 2025); *Saqib v. Andrews*, No. 1:25-CV-2035 DC CSK P, 2026 WL 350830, at *3 (E.D. Cal. Feb. 9, 2026), *report and recommendation adopted sub nom.*, No. 1:25-CV-02035-DC-CSK (HC), 2026 WL 440566 (E.D. Cal. Feb. 17, 2026); *Espada v. Doe*, No. 5:25-CV-02983-JWH-KES, 2026 WL 181539, at *5 (C.D. Cal. Jan. 20, 2026), *report and recommendation adopted*, No. 5:25-CV-02983-JWH-KES, 2026 WL 192150 (C.D. Cal. Jan. 23, 2026). As those cases and the immigration regulations make clear, when the government revokes supervision to effectuate removal, the *government* bears the burden of showing "a significant likelihood that the [noncitizen] may be removed." *See Andrews*, 2026 WL 350830, at *3.

The government fails to carry that burden here. The government makes no mention of any efforts to obtain travel documents or details of plans effectuated to remove Petitioner to Mexico. Even in the Notice of Revocation that was purportedly issued to Petitioner (Petitioner denies having received such a notice, ECF 1 at 18), ICE did not indicate that it has the ability and means to effectuate Petitioner's removal. In its opposition, Respondents merely state there is no "bar" against Petitioner's removal. ECF 9 at 5. At best, the government has stated that there is a "mere possibility that removal will occur," which is insufficient to carry its burden of showing a "significant likelihood" of removal. *Yan-Ling X. v. Lyons*, 813 F. Supp. 3d 1157, 1164 (E.D. Cal. 2025).

As noted above, the regulations permit revocation of supervision of a noncitizen for whom a final removal order has been issued upon a determination that "there is a significant likelihood that the alien may be removed in the reasonably foreseeable future." 8 C.F.R. § 241.13(i)(2). This apparently is the basis the government invokes to justify Petitioner's detention. But even when such a determination is made, the regulations require that the government provide the noncitizen with written notice and a prompt informal interview and an opportunity to submit evidence, so that the noncitizen may show that no such likelihood exists. *Id.* § 241.13(i)(3).

The generic language in the Notice of Revocation issued to Petitioner merely states that "[i]t is appropriate to enforce the removal order entered against you as ICE has the ability and means to effectuate your removal," without providing any factual support other than indicating that Petitioner's case "is under review for removal to an alternate country." ECF 9-2 at 4. Not only does the form fail to make clear which ground for revocation applied to Petitioner, but even if it did, such language has been found to be procedurally deficient and noncompliant with § 241.13(i)(2). *See Morales Sanchez v. Bondi*, 811 F. Supp. 3d 1166, 1175–76 (C.D. Cal. 2025); *see also Perez-Escobar v. Moniz*, 792 F. Supp. 3d 224, 225–26 (D. Mass. 2025) (holding generic notice stating only that officials "review[ed] [the] file" and determined "there are changed circumstances" failed to comply with the regulation or provide meaningful notice sufficient for due process).

There is another fundamental flaw in the government's position—"Section 241.13 requires that the determination that changed circumstances will result in the noncitizen's removal in the reasonably foreseeable future is made *before* the removable noncitizen has had their release revoked." *Andrews*, 2026 WL 350830, at *5 (citing cases); *see* Continued Detention of Aliens Subject to Final Orders of Removal, 66 Fed. Reg. 56967, 56971 (Nov. 14, 2001) (codified at 8 C.F.R. pts. 3, 241) ("[I]n any case where, based on a change of circumstances, the Service later makes a determination that there is a significant likelihood that the Service *subsequently* will be able to remove the alien . . . in the reasonably foreseeable future, the custody provisions of § 241.4 will again apply. *In that event*, the

Service may return the alien to detention in connection with the removal . . . ." (emphasis added)). The only changed circumstance regarding the likelihood of Petitioner's removal that the government can point to is DHS's intention to remove Petitioner to Mexico. There is no indication that DHS made any effort to arrange Petitioner's removal to Mexico prior to ICE revoking his OSUP and re-detaining him on April 7, 2026. In essence, the government contends that its post hoc actions can retroactively cure any regulatory and constitutional violations, but that is not the law.

In sum, the government has failed to demonstrate a significant likelihood that Petitioner's removal is reasonably foreseeable, and even if it had, the written notice it gave to Petitioner stating the reasons for the revocation of his OSUP was plainly deficient and violated the applicable regulations.

For the foregoing reasons, the Court concludes there are serious questions as to whether the government followed its own procedures in revoking Petitioner's OSUP and violated his due process rights.

***2. Third Country Removal***

Petitioner also argues that removal to Mexico without prior notice and an opportunity to present a fear-based claim would violate his rights. ECF 1 at 14. DHS issued Petitioner a Notice of Removal indicating its intent to remove him to Mexico, and although there is no indication that DHS has obtained travel documents or made any arrangements to effectuate Petitioner's removal, Petitioner alleges that ICE agents told him he would be removed to Mexico "as soon as possible." ECF 1 at 15.

The Court concludes that Petitioner is likely to succeed on the merits of his claim challenging removal to Mexico without sufficient due process. "[T]hird-country removals are subject to the same mandatory protections that exist in removal or withholding-only proceedings." *See D.V.D. v. U.S. Dep't of Homeland Sec.*, 778 F. Supp. 3d 355, 367 (D. Mass.), *opinion clarified*, No. CV 25-10676-BEM, 2025 WL 1323697 (D. Mass. May 7, 2025), and *opinion clarified*, No. CV 25-10676-BEM, 2025 WL 1453640 (D. Mass. May 21, 2025), *reconsideration denied sub nom. D.V.D v. U.S. Dep't of Homeland Sec.*, 786 F.

Supp. 3d 223 (D. Mass. 2025). As another court in this circuit has previously held, a "noncitizen must be given sufficient notice of a country of deportation that, given his capacities and circumstances, he would have a reasonable opportunity to raise and pursue his claim for withholding of deportation." *Aden v. Nielsen*, 409 F. Supp. 3d 998, 1009 (W.D. Wash. 2019). This requires, at a minimum, that "a noncitizen being removed to a third country be given an opportunity to be heard on whether they are subject to persecution or torture in that third country." *Ramos v. Noem*, No. 5:26-CV-00064-MEMF-ADS, 2026 WL 303536, at *6 (C.D. Cal. Feb. 4, 2026). "Failing to notify individuals who are subject to deportation that they have the right . . . for withholding of deportation to the country to which they will be deported violates both INS regulations and the constitutional right to due process." *Andriasian v. I.N.S.*, 180 F.3d 1033, 1041 (9th Cir. 1999).

The government makes no effort whatsoever to demonstrate that it afforded Petitioner any meaningful notice or opportunity to be heard on whether he will be subject to persecution or torture in Mexico. Absent such protections, any attempt to effectuate Petitioner's removal to Mexico would run afoul of due process. *See Sadychov v. Holder*, 565 F. App'x 648, 651 (9th Cir. 2014) ("[S]hould circumstances change such that Azerbaijan is the designated country of removal, the agency must provide Sadychov with notice and an opportunity to reopen his case for full adjudication of his claim of withholding of removal from Azerbaijan."). For these reasons, the Court concludes that Petitioner has demonstrated a substantial likelihood of success on the merits of his claim challenging third country removal without meaningful notice or an opportunity to be heard.

**B. <u>Irreparable Harm</u>**

Petitioner claims that continued unlawful detention in violation of his constitutional rights has caused irreparable harm warranting preliminary relief. ECF 2 at 4. Petitioner also points out that his detention creates unreasonable hardships regarding the care of his two children because the mother of his children is an active-duty member of the National Guard. *Id.* The government argues in response that Petitioner's injury is not "inherently irreparable," but rather "an injury inherent in lawful immigration detention." ECF 9 at 8.

The Court concludes that this factor heavily weighs in favor of granting emergency relief because "[d]eprivation of physical liberty by detention constitutes irreparable harm." *Arevalo v. Hennessy*, 882 F.3d 763, 767 (9th Cir. 2018) (citing *Hernandez v. Sessions*, 872 F.3d 976, 994 (9th Cir. 2017)).

### C. Other *Winter* Factors

The last two *Winter* factors merge when the government is the opposing party. *Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2014) (citing *Nken v. Holder*, 556 U.S. 418, 435 (2009)). Petitioner argues that the balance of equities and the public interest weigh in favor of granting the TRO because of the public's interests in preventing the violation of constitutional rights, and because absent relief, he will continue to face unlawful detention and potential removal without due process. ECF 2 at 4–5. Respondents argue that the significant public interest in enforcing the immigration laws outweighs Petitioner's private interest. ECF 9 at 8.

The Ninth Circuit has recognized that "neither equity nor the public's interest are furthered by allowing violations of federal law to continue." *Galvez v. Jaddou*, 52 F.4th 821, 832 (9th Cir. 2022) (holding that the district court did not abuse its discretion in finding balance of hardships weighed in favor of plaintiffs who credibly alleged that the government was violating the INA). That the government has an interest in enforcing the immigration laws is of no moment because "our system does not permit agencies to act unlawfully even in pursuit of desirable ends." *Ala. Ass'n of Realtors v. Dep't of Health & Hum. Servs.*, 594 U.S. 758, 766 (2021) (citing *Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579, 582 (1952)); *see also Am. Fed'n of Gov't Emps., AFL-CIO v. Trump*, No. 25-CV-03698-SI, 2025 WL 1482511, at *27 (N.D. Cal. May 22, 2025) (finding that injunctive relief would serve the public interest because "[t]here is generally no public interest in the perpetuation of unlawful agency action" (quoting *League of Women Voters of United States v. Newby*, 838 F.3d 1, 12 (D.C. Cir. 2016)). Thus, the balance of equities and the public interest tip sharply in favor of ordering the release of Petitioner because it obviously would be neither equitable nor in the public interest to allow the government to

continue to violate federal law.

**D. <u>Scope of Relief</u>**

"Injunctive relief should be 'no more burdensome to the defendant than necessary to provide complete relief to the plaintiffs before the court.'" *E. Bay Sanctuary Covenant v. Biden*, 993 F.3d 640, 680 (9th Cir. 2021) (quoting *Regents of the Univ. of Cal. v. U.S. Dep't of Homeland Sec.*, 908 F.3d 476, 511 (9th Cir. 2018)). Petitioner asks the Court to order his immediate release. ECF 2 at 6. Respondents argue that "the appropriate remedy for any such procedural deficiency would not be automatic release from custody, but rather to remedy the specific procedural deficiency." ECF 9 at 6.

The government does not propose how it might "remedy the specific procedural deficienc[ies]" identified herein, but in any event, any such belated offer to do so rings hollow and "would not remedy the apparent constitutional violation that Petitioner has suffered in being re-detained without any measure of due process." *Esmail v. Noem*, No. 2:25-CV-08325-WLH-RAO, 2025 WL 3030590, at *6 (C.D. Cal. Sept. 12, 2025). As many courts in this District and Circuit have similarly concluded, the only way to restore the "status quo" "is to release Petitioner and enjoin his re-detention, unless and until he is provided due process measures with respect to the revocation of his OSUP." *Id.*; *see also, e.g.*, *Ovikian v. Noem*, No. 5:26-CV-00158-WLH-E, 2026 WL 242700, at *6 (C.D. Cal. Jan. 23, 2026); *Nguyen v. Noem*, No. 5:25-CV-03191-WLH-MAR, 2025 WL 4058239, at *3 (C.D. Cal. Dec. 19, 2025); *Yan-Ling*, 2025 WL 3123793, at *7; *Nguyen v. Scott*, 796 F. Supp. 3d 703, 749 (W.D. Wash. Aug. 21, 2025) (ordering immediate release of noncitizen detained in violation of regulations).

Finally, the Court exercises its discretion and waives the bond requirement under Rule 65(c), because Respondents have not demonstrated any likelihood of harm if the Court grants the requested TRO or presented any evidence demonstrating that a bond is needed.

//

//

## IV. <u>CONCLUSION</u>

For the foregoing reasons, the TRO Application is **GRANTED**. The Court **ORDERS** as follows:

1. Petitioner shall be **IMMEDIATELY RELEASED** from custody pursuant to the same terms of his preexisting OSUP without any additional restrictions or conditions, including electronic monitoring;
2. Respondents are **ORDERED** to personally serve this Order on Petitioner, and file proof of service no later than May 23, 2026, at 5:00 p.m. Failure to do so may result in sanctions;
3. Respondents are **ORDERED** to file reliable proof with this Court that Petitioner has been released by no later than May 23, 2026, at 5:00 p.m. Failure to do so may result in sanctions;
4. Respondents are **ENJOINED** from re-detaining Petitioner unless and until he is provided proper due process under the Constitution and immigration laws and regulations necessary for the revocation of an OSUP;
5. Respondents are **ENJOINED** from removing Petitioner to a third country without notice and an opportunity to be heard;
6. Respondents are **ORDERED TO SHOW CAUSE** why a preliminary injunction should not issue. *See* L.R. 65-1. Respondents shall file any written response to the Order to Show Cause no later than **May 29, 2026. Failure to file a response will be deemed consent to the issuance of the preliminary injunction.** Upon receipt of Respondents' response, the Court may order Petitioner to file a reply if necessary. If the parties agree that the TRO should be converted into a preliminary injunction and/or that dismissal of the habeas petition is warranted because the relief sought is now moot, they shall file a joint stipulation no later than **May 29, 2026**. The Court will order an OSC hearing only if necessary.

This TRO shall take immediate effect on **May 22, 2026**. The TRO may be extended for good cause or upon Respondents' consent.

**IT IS SO ORDERED.**

Dated: May 22, 2026

HON. MONICA RAMIREZ ALMADANI
UNITED STATES DISTRICT JUDGE